## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## OCALA DIVISION

OUTPLAY INC.,

                    Plaintiff,

      v.

SUMMIT ANIMAL HEALTH LLC, and
BODE HEALTH LLC,

                Defendants.

Case No. _____

**COMPLAINT FOR
PATENT INFRINGEMENT**

**JURY TRIAL DEMANDED**

## COMPLAINT

Plaintiff Outplay Inc. ("Plaintiff" or "Outplay"), by and through the undersigned counsel, and for its Complaint against Defendant Summit Animal Health LLC ("Summit") and Defendant Bode Health LLC ("Bode") (each, individually a "Defendant," and collectively "Defendants"), hereby alleges as follows:

### NATURE OF THE ACTION

1.     This is an action for damages and injunctive relief related to Defendants' infringement of Outplay's U.S. Patent No. 10,973,868 ("the '868 Patent").

85600331;2

2.     By way of this action, Outplay seeks injunctive relief to prevent Defendants from any further infringement of Outplay's patent rights as well as damages and related relief as described herein.

## THE PARTIES

### I.    Outplay

3.     Plaintiff Outplay, Inc. is a corporation organized under the laws of the State of Nevada with its principal place of business at 1887 Whitney Mesa Dr., Suite #3252, Henderson, NV 89014.

### II.    Summit

4.     Defendant Summit is a limited liability company organized under the laws of the State of Wyoming with its principal place of business at 25631 Monroe St., Unit 200, Astatula, FL 34705. Summit may be served through its registered agent, Richard Dill, 25631 Monroe St., Unit 200, Astatula, FL 34705.

5.     Business registration filings for Summit indicate that Alisa Farmer is a Member and "CEO" of the Summit entity.

### III.    Bode

6.     Defendant Bode is a limited liability company organized under the laws of the State of Florida with its principal place of business at 25631 Monroe St., Astatula, FL 34705. Bode may be served through its registered agent, Richard Dill, 25631 Monroe St., Astatula, FL 34705.

2

7.    Business registration filings for Bode indicate that Alisa Farmer is an Authorized Member and President of the Bode entity.

8.    Business registration filings for Bode further indicate that Dorian Farmer is a "Manager" and CEO of the Bode entity.

## JURISDICTION AND VENUE

9.    This is an action for patent infringement arising out of at least Summit's unauthorized importing, making, using, offering for sale, and/or selling of Summit Animal Health's Muscle Relief Gel (hereinafter "the Summit accused product") and Bode's unauthorized importing, making, using, offering for sale, and/or selling of Bode Health's Muscle Recovery Gel (hereinafter "the Bode accused product") in violation of Outplay's patent rights. Because this is an action for infringement under the patent laws of the United States, 35 U.S.C. § 271, et. seq., this Court has subject matter jurisdiction pursuant to 28 U.S.C. § § 1331 and 1338(a).

10.    This Court has personal jurisdiction over Summit because Summit has committed and is committing infringing acts in the State of Florida and in this Judicial District, and at all times pertinent hereto, upon information and belief, Summit is registered as a foreign limited liability company and has maintained its principal place of business in this Judicial District.

11.     More particularly, Summit commits acts of infringement in the State of Florida and in this Judicial District when it, directly or through intermediaries (including distributors, retailers, and others), ships, distributes, offers for sale, sells, and advertises the Summit accused product to residents of the United States, residents of Florida, and residents of this Judicial District.  Summit has purposefully and voluntarily placed or caused to be placed the Summit accused product into the stream of commerce with the expectation that it will be purchased by consumers in Florida and in this Judicial District.  Upon information and belief, the Summit accused product has been and continues to be purchased by consumers in Florida and this Judicial District.  Therefore, and as set forth in the following paragraphs, Summit has committed the tort of patent infringement within the State of Florida and, more particularly, within this Judicial District.

12.     This Court has personal jurisdiction over Bode because Bode has committed and is committing infringing acts in the State of Florida and in this Judicial District, and at all times pertinent hereto, upon information and belief, Bode is registered as a Florida limited liability company and has maintained its principal place of business in this Judicial District.

13.     More particularly, Bode commits acts of infringement in the State of Florida and in this Judicial District when it, directly or through intermediaries (including distributors, retailers, and others), ships, distributes, offers for sale,

4

sells, and advertises the Bode accused product to residents of the United States, residents of Florida, and residents of this Judicial District.  Bode has purposefully and voluntarily placed or caused to be placed the Bode accused product into the stream of commerce with the expectation that it will be purchased by consumers in Florida and in this Judicial District.  The Bode accused product has been and continues to be purchased by consumers in Florida and this Judicial District. Therefore, and as set forth in the following paragraphs, Bode has committed the tort of patent infringement within the State of Florida and, more particularly, within this Judicial District.

14.    Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c) and 28 U.S.C. § 1400(b) for at least the reason that Defendants have a principal place of business in this Judicial District and have committed acts of infringement in this Judicial District through at least their importation, offering to sell, selling, and/or using the accused product in this Judicial District.

15.    Joinder of the Defendants is proper pursuant to 35 U.S.C. § 299(a) at least because, and for the reasons set forth in the following paragraphs, (i) the Summit accused product and the Bode accused product are, on information and belief, the same product, or, on information and belief, are comprised of, the same infringing formulation, (ii) Defendants and/or those acting on their behalf, including Ms. Farmer and/or Mr. Farmer, have acted in concert to induce

infringement, including by acting in concert and on behalf of Summit and Bode to induce a common manufacturer to make and then sell the infringing product to Summit and Bode, which Summit and Bode bottle, brand, and resell as the Summit accused product and Bode accused product, respectively.  In addition, questions of fact common to each Defendant will arise in the action, at least because, upon information and belief, the Summit accused product and the Bode accused product are the same infringing product and/or are comprised of the same infringing formulation, and Defendants have in concert with one another committed acts that induce a common manufacturer to directly infringe by making and selling to Summit and Bode a common infringing product, which Summit and Bode then bottle, brand, and resell as the Summit accused product and Bode accused product, respectively.

## FACTUAL ALLEGATIONS

### I.    Outplay's Innovation

16.    Outplay Inc. was founded in 2014 with the goal of developing products that improve athletic performance.  In furtherance of this goal, Outplay conducted research and development surrounding carnosine and its impacts on and within the body.

17.    Carnosine (b-alanyl-L-histidine) is a naturally occurring histidine-containing compound, found naturally in many animal tissues, including skeletal

muscle.  Carnosine operates to neutralize the negative impacts of lactic acid, which builds up in muscle tissue during exercise, particularly anerobic exercise, such as sprinting.  Lactic acid within muscle tissue creates an overly acidic environment, which hinders the muscle's ability to contract and ultimately reduces the body's ability to optimally produce energy.

18.    In addition to helping the body offset the acidic environment created by the buildup of lactic acid, carnosine also acts as an effective antioxidant against oxidative stress and it is also linked to enzyme regulation related to activation of myosin ATPase, which is used to help maintain ATP stores.

19.    Outplay and its affiliates conducted research and development activities in furtherance of developing a carnosine-based product with superior usability and delivery characteristics, including conducting peer-reviewed studies to evaluate the technology's performance and effectiveness.

20.    As a result of this innovative focus, Outplay made the revolutionary and unexpected discovery that the presence of magnesium coordinated to carnosine ("carnosine-magnesium complex") increased the levels of carnosine in lower levels of skin following topical application of the carnosine-magnesium complex. As the inventors discovered, topical application of the carnosine-magnesium complex permits carnosine to be delivered through the skin and into

7

the skeletal muscle directly in sufficient quantity to significantly improve athletic performance and recovery.

## II.    The Patented Technology

21.    Recognizing the novelty of its invention, the inventors and Outplay sought to protect their extensive investment of resources by applying for a patent on their discovery and applicationsrelated to the carnosine-magnesium complex.

22.    On August 14, 2018, Outplay filed a U.S. national stage application, which was assigned U.S. Patent Application No. 16/077,794. The U.S. Patent and Trademark Office ultimately granted U.S. Patent Application No. 16/077,794 as the '868 Patent.

23.    Outplay is the current owner and assignee of the '868 Patent entitled "Composition For Topical Use Based on a Carnosine-Magnesium Complex," which was duly and legally issued by the United States Patent and Trademark Office on April 13, 2021. A copy of the '868 Patent is attached hereto as Exhibit 1.

## III.    Commercialization of the Patented Technology

24.    Outplay recognized the benefit its patented technology could bring to the sports performance industry. To commercialize the '868 Patent in different fields within the sports performance industry, Outplay created two brands to bring its inventive technology to market:  LactiGo and Velocity.

25.    LactiGo was launched with the purpose and vision of bringing to market a topical gel that leveraged the composition of the carnosine-magnesium complex claimed in the '868 patent to increase performance in human athletes.

26.    LactiGo launched in 2018 and was quickly adopted by athletes of all different sports and activities as a result of its ability to aid in performance and energy, rapid muscle recovery, and reduced muscle fatigue.

27.    LactiGo has received an outcry of public admiration. For instance, in 2024, ESPN published an article that recognized LactiGo as "a topical muscle recovery and sports performance gel that [] is gaining popularity among NHL players."    https://www.espn.com/nhl/story/_/id/39907876/nhl-capitals-teammates-lactigo-recovery-beagle-fehr-alzner.

28.    In connection with the commercialization of its patented technology, LactiGo products have been the subject of independent academic evaluation.  Most recently in 2024, an independent, peer-reviewed study involving elite athletes from the New Zealand All Blacks Rugby Sevens Team was published in a scientific journal. According to the study's authors, use of the LactiGo product under the study conditions was associated with an observed increase in high-intensity exercise output of approximately 5 to 10 percent in world-class rugby sevens players. The study was conducted independently by the researchers, and LactiGo

did not control the study design, data collection, analysis, or conclusions. https://www.tandfonline.com /doi/full/10.1080/15502783.2025.2550311.

29.    Velocity was launched in 2020 with the purpose and vision of bringing to the equine market a topical gel that leveraged the composition of the carnosine-magnesium complex claimed in the '868 patent to increase performance in equines.

30.    Velocity quickly received industry praise for its efficacy in supporting equine performance, recovery and overall equine wellness. As one example, the Chronicle of the Horse and World of Show Jumping detailed the instrumentality of Velocity in bringing equine HH Azur ("Annie") back to health after she tore a muscle during in July 2018. With the use of Velocity, Annie was able to make a speedy recovery by March 2019 where she competed and won the Saturday Night Lights    $500,000    Rolex    Grand    Pix    CSI    5*    event.    *See* http://chronofhorse.com/article/from-muscle-tear-to-major-grand-prix-win-how-velocity-helped-hh-azur-get-back-on-top/; https://www.worldofshowjumping.com/en/News/Advertorials/From-muscle-tear-to-major-Grand-Prix-win-How-Velocity-helped-HH-Azur-get-back-on-top.html.

31.    Heelsdown, a popular independent equestrian media outlet, even highlighted Velocity as a top gift for the 2020 season noting it as "a new product

that works." *See* https://heelsdownmag.com/no-coal-in-this-stocking-heels-down-holiday-gift-guide-2020/.

32.    Velocity and LactiGo are both marked as patented technology with reference to the '868 Patent and have been since their initial sales.

## IV.    Summit's Infringement

33.    Summit was founded in 2021 by Alisa Farmer.

34.    Summit holds itself out as an "animal health" company "creating innovative, natural solutions to tackle your pet's biggest challenges – helping them move, feel, play, and perform at their best." *See* https://www.summitanimalhealth.com/.

85600331;2

35.    Summit, through its website, offers for sale and sells a product called

Muscle Relief Gel.    https://www.summitanimalhealth.com/products/muscle-

relief-gel-horse.



36.    In addition to its own webpage, Summit offers to sell and sells its

Muscle Relief Gel throughout the United States and this Judicial District via a

## May I still order if I live outside the United States?

Summit Animal Health accepts orders within the fifty (50) United States, Puerto Rico, and APO/FPO addresses. We offer standard shipping to domestic P.O. Boxes, Puerto Rico, U.S. Virgin Islands and APO/FPO Military addresses. We are growing quickly with a goal to ship internationally. Please contact hello@summitanimalhealth.com to see if we can accommodate your shipping request. For your protection, we will not ship merchandise if we are unable to verify your billing address. *Shipping methods are subject to change depending on final destination.

number of other online platforms including, but not limited to, Chewy.com and Amazon.com.

37.    Summit, through its webpage and other marketing collateral instructs consumers to topically apply Muscle Relief Gel. Summit even advertises the topical application by touting the benefits of the magnesium-carnosine complex disclosed in the '868 Patent by noting it is "Fast-Absorbing, Quick Relief."



38.     Summit advertises its Muscle Relief Gel as having an "advanced 3% L-Carnosine formula" that is paired with magnesium sulfate and Arnica montana.



39.     On information and belief, Dorian Farmer, who is, was, or may be related to Alisa Farmer, works for and/or runs or helps run Summit.  For instance, Mr. Farmer has registered, or is affiliated with, several other Florida businesses related or that appear related to the equine industry and/or health or sports performance products, such as:

- Eternapure LLC;

- Novanto Technologies LLC;

- Ultimate Fitness Training LLC;

- Ultimate Fitness Nutrition LLC;

- Central Florida Equine Orthopedics, LLC;

- Titleist Technologies LLC;

- Superior Equine Veterinary Services Inc.;

- Equine Joint Performance Inc.; and

- Defendant Bode Health LLC;

40.     Through operating one or more of these companies and/or Summit, as well as through his experience in the equine industry, Mr. Farmer became acquainted with Marilyn Little.  Ms. Little is an experienced equestrian athlete with years of experience in the industry.  For instance, Ms. Little has registered, or is affiliated with, several other Florida businesses related or that appear related to the equine industry, health or sports performance products, and/or businesses with which Mr. Farmer is or was affiliated, such as:

- Prime Equine Research LLC; and

- Prime Performance Research LLC.

41.     On information and belief, Ms. Little and Mr. Farmer took note of Outplay's success with its Velocity product and sought to replicate this success with their own knock-off products.

42.     For instance, in or around May 2022, John Lizza received a phone call from Ms. Little concerning Velocity and a new product Ms. Little was developing or assisting in developing.  On this call, Ms. Little indicated that she had used Velocity and liked it.  Further, Ms. Little indicated that she had arranged for

15

Velocity to be reverse engineered so that she could make and sell a copycat product. On information and belief, the first version of this copycat product was called Prime Equine Emulgel and was, for a time, distributed by Prime Equine Research LLC and/or Eternapure LLC via https://www.eternapure.com and/or https://www.prime-equine.net/.

43. Throughout at least 2023 and 2024, Prime Equine Emulgel was also distributed, advertised, sold, and/or offered for sale by Ms. Little and Summit, or a predecessor of Summit, as evidenced by the following screenshots from Summit's Instagram account.



85600331;2

*See* https://www.instagram.com/summitanimalhealth/reel/Cnzd_ovPXNL/.



*See* https://www.instagram.com/p/CnmsygiuLZQ/?img_index=2.



*See* https://www.instagram.com/p/C2afPnks8EC/.

44.     Mr. Farmer is or was affiliated with Eternapure LLC.  Mr. Farmer is or has been listed as Eternapure LLCs's CEO in business registration filings.

45.     Eternapure LLC is or was a predecessor to Summit.  Indeed, the website     www.eternapure.com     now     directs     to     Summit's     website, www.summitanimalhealth.com.

46.     On information and belief, Ms. Little, Ms. Farmer, and/or Mr. Farmer are now distributing a second version of this copycat product through Summit as Summit's Muscle Relief Gel, which is or is based on the formulation Ms. Little accessed through reverse engineering Outplay's Velocity product. Through these activities, Ms. Little, Ms. Farmer, and/or Mr. Farmer became aware, or should have become aware, of Outplay's '868 Patent, and proceeded to create and distribute a copycat product despite this awareness or despite their willful blindness to Outplay's patented technology.

47.     On information and belief, Ms. Farmer, through her involvement with Summit, was and is aware of Ms. Little's and/or Mr. Farmer's activities concerning the reverse engineering of the Velocity product, and therefore was or should have been aware of Outplay's '868 Patent and likewise proceeded to create and distribute a copycat product despite this awareness or despite this willful blindness to Outplay's patented technology.  Moreover, Ms. Farmer has been and

is on constructive notice of Outplay's '868 Patent because Outplay marks the Velocity and LactiGo products with the '868 Patent.

**V.    Bode's Infringement**

48.    Bode was founded in 2025 by Ms. Farmer and Mr. Farmer.

49.    Bode holds itself out as an "health" and "wellness" company providing "everyday wellness support and performance-focused formulas."  *See* https://bodehealth.com/ pages/our-philosophy; https://bodehealth.com/collections/all.

50.    Bode, through its website, offers for sale and sells a product called Muscle Recovery Gel.  https://bodehealth.com/products/muscle-recovery-gel.



51.     Through its own webpage, Bode offers to sell and sells its Muscle Relief Gel throughout the United States and this Judicial District.

### May I still order if I live outside the United States?

Bode Health accepts orders within the fifty (50) United States, Puerto Rico, and APO/FPO addresses. We offer standard shipping to domestic P.O. Boxes, Puerto Rico, U.S. Virgin Islands and APO/FPO Military addresses. We are growing quickly with a goal to ship internationally. Please contact hello@bodehealth.com to see if we can accommodate your shipping request. For your protection, we will not ship merchandise if we are unable to verify your billing address. *Shipping methods are subject to change depending on final destination.

52.     Like Summit, Bode, through its webpage and other marketing collateral instructs consumers to "[a]pply directly to muscles or joints before and after physical activity."



53.    Like Summit, Bode advertises its Muscle Recovery Gel as having the same "3% L-Carnosine" formula that is paired with magnesium sulfate and arnica montana.  In fact, Bode's website uses the same graphic as Summit's website to advertise these ingredients.

| Summit's Website<br>([https://www.summitanimalhealth.com/products/muscle-relief-gel-horse](https://www.summitanimalhealth.com/products/muscle-relief-gel-horse)) | Bode's Website<br>([https://bodehealth.com/products/muscle-recovery-gel](https://bodehealth.com/products/muscle-recovery-gel)) |
| --- | --- |
|  | |

54.    On information and belief, Ms. Farmer and Mr. Farmer, as well as other employees or agents of Summit and Bode, simultaneously operate Bode and Summit and act in concert to infringe and induce infringement of Outplay's '868 Patent.

55.    For instance, business registration filings for Summit indicate that Alisa Farmer is a Member and "CEO" of the Summit entity and an Authorized Member and President of the Bode entity.

56.     The business registration filings of Summit and Bode list the same principal place of business in this Judicial District of 25631 Monroe St., Astatula, FL 34705 and list the same registered agent, Richard Dill, operating out of the same place of business, 25631 Monroe St., Astatula, FL 34705.

57.     Further, the Summit website provides a link to the Bode website, indicating "[s]hop human products at Bode Health."



58.     On information and belief, Summit's Muscle Relief Gel and Bode's Muscle Recovery Gel are the same product, or at a minimum, comprise the same relevant formulation.

59.     By doing so, and by virtue of their knowledge of or willful blindness to Outplay's '868 Patent, Bode is distributing the same copycat product that Summit is distributing, which is or is based on the formulation Ms. Little accessed

through reverse engineering Outplay's Velocity product. Through these and the above-described activities, Ms. Little, Ms. Farmer, and/or Mr. Farmer became aware, or should have become aware, of Outplay's '868 Patent, and proceeded to create and distribute, through Bode and Summit, this same copycat product despite this awareness or despite their willful blindness to Outplay's patented technology.  Moreover, Mr. Farmer has been and is on constructive notice of Outplay's '868 Patent because Outplay marks the Velocity and LactiGo products with the '868 Patent.

60.     On information and belief, Ms. Farmer and/or Mr. Farmer, or others acting on behalf of Summit and Bode, obtain the raw product that is used in Summit's Muscle Relief Gel and Bode's Muscle Recovery Gel from the same manufacturer.  Ms. Farmer and/or Mr. Farmer, or others acting on behalf of Summit and Bode, thus act simultaneously on behalf of both Summit and Bode when ordering this raw product from the manufacturer.

61.     By doing so, Ms. Farmer and/or Mr. Farmer, or others acting on behalf of Summit and Bode, and with knowledge of Outplay's '868 Patent and with knowledge of their infringement, induce, cause, aid, or encourage (and continue to do so) this manufacturer to make a product that meets the elements of at least claim 1 of Outplay's '868 Patent, and this manufacturer thus directly infringes

85600331;2

Outplay's '868 Patent when it does so.  As such, Summit and Bode act in concert to indirectly infringe Summit's '868 Patent.

## COUNT I: INFRINGEMENT OF U.S. PATENT NO. 10,973,868
### (Against Summit)

62.    Outplay incorporates by reference and re-alleges each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

63.    The '868 patent is valid and enforceable.

64.    Summit has directly infringed (either literally or under the doctrine of equivalents) and continues to directly infringe one or more of the claims of the '868 Patent, in violation of 35 U.S.C. § 271(a), by making, using, offering for sale, and/or selling the Muscle Relief Gel within the United States and/or importing the Muscle Relief Gel into the United States without authority or license.

65.    As a non-limiting example, set forth below is an exemplary infringement claim chart for claim 1 of the '868 Patent.  This claim chart is based on publicly available information.  Outplay reserves the right to modify this claim chart, including, for example, on the basis of information about the Muscle Relief Gel product and/or other products that it obtains during discovery.

85600331;2

| '868 Patent, Claim 1 | Summit's Muscle Relief Gel |
|---|---|
| 1. A topical composition | Summit's Muscle Relief Gel is a topical composition.<br><br>For instance, the product is a gel, designed to be applied directly to the horse's skin.<br><br>Summit advertises that the product is "[f]or external topical use on horses." |



| | |
|---|---|
| comprising a physiologically active amount of a carnosine-magnesium complex, | Summit's Muscle Relief Gel comprises a physiologically active amount of a carnosine-magnesium complex. |

For instance, Summit advertises that its product contains "L-Carnosine" and "Magnesium Sulfate."



Summit further advertises that "L-Carnosine" and "Magnesium Sulfate" are "active" ingredients.



As such, the L-carnosine is present in a complex with magnesium ions provided by the magnesium sulfate ingredient.

| wherein the physiologically active amount of the | Summit's Muscle Relief Gel comprises a physiologically active amount of a carnosine-magnesium complex that represents a quantity of the carnosine-magnesium complex of from 0.5 to 5 wt % |
| --- | --- |

| | |
|---|---|
| carnosine-magnesium complex represents a quantity of the carnosine-magnesium complex of from 0.5 to 5 wt % of the topical composition for delivering carnosine to skeletal muscle tissue. | of the topical composition for delivering carnosine to skeletal muscle tissue.<br><br>For instance, Summit advertises that its product contains a "3% L-Carnosine formula," which falls within the claimed range of "0.5 to 5 wt % of the topical composition."<br><br><br><br>Moreover, Summit advertises that its product "soothes sore muscles" and "reduces inflammation and swelling." |

66.     Additionally and/or alternatively, Summit has indirectly infringed and continues to indirectly infringe one or more of the claims of the '868 Patent, in violation of 35 U.S.C. § 271(b), by actively inducing Summit customers to directly infringe the one or more claims of the '868 Patent.  For example, (a) Summit had actual knowledge of the '868 Patent or was willfully blind to its existence prior to the filing of this Complaint (e.g., Summit, through its officers, agents, or

employees, such as Ms. Little and/or Mr. Farmer, had actual knowledge of the '868 Patent or were willfully blind to its existence at least as early as 2022 when Ms. Little and/or Mr. Farmer became aware of Outplay's Velocity product, which was marked with the '868 Patent Number, reverse engineered it, and began offering for sale and selling a copycat product), (b) Summit intentionally causes, urges, or encourages Summit customers to directly infringe one or more claims of the '868 Patent by promoting, advertising, and instructing customers and potential customers about the Muscle Relief Gel product and uses thereof, and (c) Summit knows (or should know) that its actions will induce Summit customers to directly infringe one or more claims of the '868 Patent, and (d) Summit customers who purchased and used Muscle Relief Gel directly infringe one or more claims of the '868 Patent.

67.     Additionally and/or alternatively, Summit has indirectly infringed and continues to indirectly infringe one or more of the claims of the '868 Patent, in violation of 35 U.S.C. § 271(b), by (and in concert with Bode) actively inducing a manufacturer to make and then sell to Summit raw product that meets the elements of one or more claims of the '868 Patent, which Summit then bottles and sells and/or offers to sell as its Muscle Relief Gel.  For example, (a) Summit had actual knowledge of the '868 Patent or was willfully blind to its existence prior to the filing of this Complaint (e.g., Summit, through its officers, agents, or

employees, such as Ms. Little, Ms. Farmer, and/or Mr. Farmer, had actual knowledge of the '868 Patent or were willfully blind to its existence at least as early as 2022 when Ms. Little and/or Mr. Farmer became aware of Outplay's Velocity product, which was marked with the '868 Patent Number, reverse engineered it, and began offering for sale and selling a copycat product), (b) Summit intentionally causes, urges, or encourages its manufacturer to directly infringe one or more claims of the '868 Patent by causing, urging, encouraging, and ordering its manufacturer to make and then sell to Summit the raw product, which Summit bottles and rebrands as its Muscle Relief Gel product, and (c) Summit knows (or should know) that its actions will induce its manufacturer to directly infringe one or more claims of the '868 Patent when its manufacturer makes and then sells to Summit this raw product, and (d) Summit's manufacturer directly infringes one or more claims of the '868 Patent by making and then selling to Summit this raw product.

68. Summit's infringement of the '868 Patent is and has been willful, as outlined above, because Summit, through its officers, agents, or employees, such as Ms. Little, Ms. Farmer, and/or Mr. Farmer (a) had actual knowledge of the '868 Patent or were willfully blind to its existence prior to the filing of this Complaint (e.g., Summit, through its officers, agents, or employees, such as Ms. Little and/or Mr. Farmer, had actual knowledge of the '868 Patent or were willfully blind to its

existence at least as early as 2022 when Ms. Little and/or Mr. Farmer became aware of Outplay's Velocity product, which was marked with the '868 Patent Number, reverse engineered it, and began offering for sale and selling a copycat product), (b) engaged in the aforementioned activity despite an objectively high likelihood that Summit's actions constituted infringement of the '868 Patent, and (c) this objectively defined risk was either known or so obvious that it should have been known to Summit.

69.    Additional allegations regarding Summit's pre-suit knowledge of the '868 Patent and willful infringement will likely have evidentiary support after a reasonable opportunity for discovery.

70.    Outplay is in compliance with any applicable marking and/or notice provisions of 35 U.S.C. § 287 with respect to the '868 Patent.

71.    Outplay is entitled to recover from Summit all damages that Outplay has sustained as a result of Summit's infringement of the '868 Patent, including, without limitation, a reasonable royalty and lost profits.

72.    Summit's infringement of the '868 Patent was and continues to be willful and deliberate, entitling Outplay to enhanced damages.

73.    Summit's infringement of the '868 Patent is exceptional and entitles Outplay to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

74.     Summit's infringement of the '868 Patent has caused irreparable harm (including the loss of market share) to Outplay and will continue to do so unless enjoined by this Court.

### COUNT II: INFRINGEMENT OF U.S. PATENT NO. 10,973,868
### (Against Bode)

75.     Outplay incorporates by reference and re-alleges each and every allegation contained in paragraphs 1-61 as though fully set forth herein.

76.     The '868 patent is valid and enforceable.

77.     Bode has directly infringed (either literally or under the doctrine of equivalents) and to continue to directly infringe one or more of the claims of the '868 Patent, in violation of 35 U.S.C. § 271(a), by making, using, offering for sale, and/or selling the Muscle Recovery Gel within the United States and/or importing the Muscle Recovery Gel into the United States without authority or license.

78.     As a non-limiting example, set forth below is an exemplary infringement claim chart for claim 1 of the '868 Patent.  This claim chart is based on publicly available information.  Outplay reserves the right to modify this claim chart, including, for example, on the basis of information about the Muscle Recovery Gel product and/or other products that it obtains during discovery.

| '868 Patent, Claim 1 | Bode's Muscle Recovery Gel |
|---|---|
| 1. A topical composition | Bode's Muscle Recovery Gel is a topical composition.<br><br>For instance, the product is a gel, designed to be applied directly to a person's skin.<br><br>Bode advertises that the product is for "[t]opical use only."<br><br><br><br>**Suggested use:**<br>Apply directly to muscles or joints before and after physical activity. Use daily for ongoing support and long-term resilience.<br><br>Topical use only. Most users feel relief within 45 minutes; results build with continued use. |
| comprising a physiologically active amount of a carnosine-magnesium complex, | Bode's Muscle Recovery Gel comprises a physiologically active amount of a carnosine-magnesium complex.<br><br>For instance, Bode advertises that its product contains "L-Carnosine" and "Magnesium Sulfate." |

33



Bode further advertises that "L-Carnosine" and "Magnesium Sulfate" are "active" ingredients.

Ingredients                                                                          –

Active ingredient: L-Carnosine (3%), Magnesium Sulfate, Arnica Montana

Inactive Ingredients: Purified Water, Aloe Vera, Hydroxyethyl Cellulose, Tetrasodium
Glutamate Diacetate, Phenoxyethanol

As such, the L-carnosine is present in a complex with magnesium ions provided by the magnesium sulfate ingredient.

| wherein the physiologically active amount of the carnosine-magnesium complex | Bode's Muscle Recovery Gel comprises a physiologically active amount of a carnosine-magnesium complex that represents a quantity of the carnosine-magnesium complex of from 0.5 to 5 wt % of the topical composition for delivering carnosine to skeletal muscle tissue. |
| --- | --- |

| represents a quantity of the carnosine-magnesium complex of from 0.5 to 5 wt % of the topical composition for delivering carnosine to skeletal muscle tissue. | For instance, Bode advertises that its product contains a "3% L-Carnosine with magnesium" formula, which falls within the claimed range of "0.5 to 5 wt % of the topical composition."  Moreover, Bode advertises that its product "[s]upports recovery and resilience," targets "soreness, inflammation, and fatigue," and is for "[a]nyone with sore, tight, or overworked muscles and joints." |

79.    Additionally and/or alternatively, Bode has indirectly infringed and continues to indirectly infringe one or more of the claims of the '868 Patent, in violation of 35 U.S.C. § 271(b), by actively inducing Bode customers to directly infringe the one or more claims of the '868 Patent.  For example, (a) Bode had actual knowledge of the '868 Patent or was willfully blind to its existence prior to the filing of this Complaint (e.g., Bode, through its officers, agents, or employees, such

85600331;2

as Ms. Little, Ms. Farmer, and/or Mr. Farmer, had actual knowledge of the '868 Patent or were willfully blind to its existence at least as early as 2022 when Ms. Little and/or Mr. Farmer became aware of Outplay's Velocity product, which was marked with the '868 Patent Number, reverse engineered it, and began offering for sale and selling a copycat product), (b) Bode intentionally causes, urges, or encourages Bode customers to directly infringe one or more claims of the '868 Patent by promoting, advertising, and instructing customers and potential customers about the Muscle Recovery Gel product and uses thereof, and (c) Bode knows (or should know) that its actions will induce Bode customers to directly infringe one or more claims of the '868 Patent, and (d) Bode customer who purchased and used Muscle Recovery Gel directly infringe one or more claims of the '868 Patent.

80.    Additionally and/or alternatively, Bode has indirectly infringed and continues to indirectly infringe one or more of the claims of the '868 Patent, in violation of 35 U.S.C. § 271(b), by (and in concert with Summit) actively inducing a manufacturer to make and then sell to Bode raw product that meets the elements of one or more claims of the '868 Patent, which Bode then bottles and sells and/or offers to sell as its Muscle Recovery Gel.  For example, (a) Bode had actual knowledge of the '868 Patent or was willfully blind to its existence prior to the filing of this Complaint (e.g., Bode, through its officers, agents, or employees, such

as Ms. Little, Ms. Farmer, and/or Mr. Farmer, had actual knowledge of the '868 Patent or were willfully blind to its existence at least as early as 2022 when Ms. Little and/or Mr. Farmer became aware of Outplay's Velocity product, which was marked with the '868 Patent Number, reverse engineered it, and began offering for sale and selling a copycat product), (b) Bode intentionally causes, urges, or encourages its manufacturer to directly infringe one or more claims of the '868 Patent by causing, urging, encouraging, and ordering its manufacturer to make and then sell to Bode the raw product, which Bode bottles and rebrands as its Muscle Relief Gel product, and (c) Bode knows (or should know) that its actions will induce its manufacturer to directly infringe one or more claims of the '868 Patent when its manufacturer makes and then sells to Bode this raw product, and (d) Bode's manufacturer directly infringes one or more claims of the '868 Patent by making and then selling to Bode this raw product.

81.    Bode's infringement of the '868 Patent is and has been willful, as outlined above, because Bode, through its officers, agents, or employees, such as Ms. Little, Ms. Farmer, and/or Mr. Farmer (a) had actual knowledge of the '868 Patent or were willfully blind to its existence prior to the filing of this Complaint (e.g., Bode, through its officers, agents, or employees, such as Ms. Little and/or Mr. Farmer, had actual knowledge of the '868 Patent or were willfully blind to its existence at least as early as 2022 when Ms. Little and/or Mr. Farmer became

85600331;2

aware of Outplay's Velocity product, which was marked with the '868 Patent Number, reverse engineered it, and began offering for sale and selling a copycat product), (b) engaged in the aforementioned activity despite an objectively high likelihood that Bode's actions constituted infringement of the '868 Patent, and (c) this objectively defined risk was either known or so obvious that it should have been known to Bode.

82.    Additional allegations regarding Bode's pre-suit knowledge of the '868 Patent and willful infringement will likely have evidentiary support after a reasonable opportunity for discovery.

83.    Outplay is in compliance with any applicable marking and/or notice provisions of 35 U.S.C. § 287 with respect to the '868 Patent.

84.    Outplay is entitled to recover from Bode all damages that Outplay has sustained as a result of Bode's infringement of the '868 Patent, including, without limitation, a reasonable royalty and lost profits.

85.    Bode's infringement of the '868 Patent was and continues to be willful and deliberate, entitling Outplay to enhanced damages.

86.    Bode's infringement of the '868 Patent is exceptional and entitles Outplay to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

85600331;2

87.     Bode's infringement of the '868 Patent has caused irreparable harm (including the loss of market share) to Outplay and will continue to do so unless enjoined by this Court.

## DEMAND FOR JURY TRIAL

88.     Pursuant to Rule 38(b) of the Federal Rule of Civil Procedure, Outplay hereby demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Outplay respectfully requests:

A.     That Judgment be entered that Summit has infringed at least one or more claims of the '868 Patent and continues to infringe at least one or more claims of the '868 Patent directly and/or indirectly, literally and/or under the doctrine of equivalents, and that such infringement has been and is, willful;

B.     That Judgment be entered that Bode has infringed at least one or more claims of the '868 Patent and continues to infringe at least one or more claims of the '868 Patent directly and/or indirectly, literally and/or under the doctrine of equivalents, and that such infringement has been and is, willful;

C.     An injunction enjoining Summit, its officers, agents, servants, employees and attorneys, and other persons in active concert or participation with

Summit, and its parents, subsidiaries, divisions, successors and assigns, from further infringement of the '868 Patent.

      D.      An injunction enjoining Bode, its officers, agents, servants, employees and attorneys, and other persons in active concert or participation with Bode, and its parents, subsidiaries, divisions, successors and assigns, from further infringement of the '868 Patent.

      E.      An award of damages sufficient to compensate Outplay for Summit's infringement under 35 U.S.C. § 284, including an enhancement of damages on account of Summit's willful infringement;

      F.      An award of damages sufficient to compensate Outplay for Bode's infringement under 35 U.S.C. § 284, including an enhancement of damages on account of Bode's willful infringement;

      G.      That the case be found exceptional under 35 U.S.C. § 285 and that Outplay be awarded its reasonable attorneys' fees;

      H.      Costs and expenses in this action;

      I.      An award of prejudgment and post-judgment interest; and

      J.      Such other and further relief as the Court may deem just and proper.

Date: February 25, 2026                Respectfully submitted,

By:    */s/ Alejandro J. Fernandez*
Alejandro J. Fernandez
Florida Bar No. 32221
Florida Bar Board Certified in Intellectual Property
Email:alejandro.fernandez@akerman.com
**AKERMAN LLP**
401 E. Jackson Street, Suite 1700
Tampa, FL 33602
Telephone No.: (813) 223-7333
Facsimile No.: (813) 223-2837
Secondary Email:
nicole.emmett@akerman.com

George I. Lee (*pro hac vice* forthcoming)
lee@ls3ip.com
Sean M. Sullivan (*pro hac vice* forthcoming)
sullivan@ls3ip.com
Rory P. Shea (*pro hac vice* forthcoming)
shea@ls3ip.com
J. Dan Smith (*pro hac vice* forthcoming)
smith@ls3ip.com
Cole B. Richter, **Lead Trial Counsel** (*pro hac vice* forthcoming)
richter@ls3ip.com
Michael P. Boyea (*pro hac vice* forthcoming)
boyea@ls3ip.com
Jae Y. Pak (*pro hac vice* forthcoming)
pak@ls3ip.com
Andrew Gerla (*pro hac vice* forthcoming)
gerla@ls3ip.com
Sydney Hecimovich (*pro hac vice* forthcoming)
hecimovich@ls3ip.com
**LEE SULLIVAN SHEA & SMITH LLP**
656 West Randolph Street, Floor 5W
Chicago, IL 60661
Tel: (312) 754-0002
Fax: (312) 754-0003

41

Nicholas S. Bobb *(pro hac vice* forthcoming*)*
Jeff J. Nein *(pro hac vice* forthcoming*)*
**KEGLER, BROWN, HILL + RITTER**
65 E. State Street, Suite 1800
Columbus, Ohio 43215
Tel:  (614) 462-5400
Fax:  (614) 464-2634
nbobb@keglerbrown.com
jnein@keglerbrown.com

*Attorneys for Plaintiff Outplay, Inc.*

42